UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID ZEHR, M.D., | § | No. 5:18-CV-355-DAE |
| | § | |
| Appellant, | § | |
| | § | |
| vs. | § | |
| | § | |
| RANDOLPH N. OSHEROW, | § | |
| Chapter 7 Trustee, | § | |
| | § | |
| Appellee. | § | |

ORDER DENYING APPELLANT'S MOTION FOR STAY PENDING APPEAL
(DKT. # 21)

Before the Court is a Motion for Stay Pending Appeal filed by

Appellant David Zehr, M.D. ("Appellant" or "Zehr"). (Dkt. # 21.) On January 9,

2019, the Court held a hearing on this motion. At the hearing, Gerrit M. Pronske,

Esq., represented Appellant, and Sara Murray, Esq., Natalie F. Wilson, Esq., and

David S. Gragg, Esq., represented Appellee Randolph N. Osherow, the Chapter 7

trustee in the underlying bankruptcy action ("Trustee"). After careful consideration

of the memoranda filed in support of and in opposition to the motion, as well as the

arguments advanced at the hearing, the Court—for the reasons that follow—

**DENIES** Appellant's Motion for Stay Pending Appeal. (Id.)

1

<u>BACKGROUND</u>

This appeal arises from an adversary proceeding in bankruptcy court between the Trustee and Zehr, related to the bankruptcy of FWLL, Inc. ("FWLL" or "Debtor"). On July 27, 2018, the Bankruptcy Court entered an Amended Final Judgment in favor of the Trustee, avoiding transfers made by Debtor to Zehr, under Sections 544 and 548 of the Bankruptcy Code, 11 U.S.C. §§ 544 and 548, and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.001–24.013. (Adversary Proceeding Docket ("Adv. Dkt.") # 190.)[1]

I.      <u>Factual Background</u>

Debtor and ZSV, LLC ("ZSV"), an entity majority-owned but not managed by Zehr, formed the Texas Silica Logistics Joint Venture (the "Joint Venture") on or about April 29, 2014. (Adv. Dkt. # 149 at 6.) The Joint Venture agreed to split profits and losses 45% to Debtor and 55% to ZSV. (Id.) On or about April 29, 2014, ZSV lent $2.4 million to the Joint Venture pursuant to a secured promissory note. (Id. at 7.) Zehr's total investments in the Joint Venture through ZSV totaled approximately $4.2 million. (Id.)

Pursuant to a transaction with a third party that did not conclude as expected and resulted in litigation, on or about July 8, 2015, Debtor received a

---

[1] Citations to the Adversary Proceeding Docket refer to Adversary Proceeding Case No. 16-5023-CAG.

settlement payment of $2,518,394.09, as well as other consideration.  (Id. at 8–10.)

Immediately thereafter, Debtor and ZSV agreed to dissolve the Joint Venture.  (Id.

at 10.)  The Joint Venture dissolution agreement included the following terms:

- Debtor assigned its right, title, and interest in the Joint Venture to ZSV;
- Debtor agreed to pay $2,518,394.09 (the "Joint Venture Payment") to ZSV as consideration for the settlement;
- Debtor agreed to pay ZSV the additional consideration from its settlement with the third party;
- ZSV agreed to mark the promissory note it held from the Joint Venture as "Paid in Full" and return the note to Debtor;
- ZSV and its owners agreed to indemnify and defend Debtor and its counsel for any future claims brought against the Joint Venture or Debtor in its capacity as joint-venture partner; and
- Mutual releases between ZSV and Debtor, including from: (1) claims related to breaches fiduciary duties or of the joint venture agreement; (2) claims arising from the promissory note; (3) claims arising from the termination of the Joint Venture, including tax implications.

(Id.)  The Joint Venture Payment—identical to the amount Debtor received from

the third-party settlement—was ultimately made directly from Debtor's counsel to

Zehr, instead of to ZSV.  (Id. at 11.)

II.    Procedural Background

On August 27, 2015, Debtor filed a voluntary petition for bankruptcy

under Chapter 11, In re FWLL, LLC, Case No. 15-52071-CAG.  (Id.  at 11.)  On

motion of a creditor, the case was converted to Chapter 7 on November 4, 2015,

and Osherow was appointed trustee.  (Id.)

Trustee initiated the underlying adversary proceeding on March 31, 2016.  (Id. at 2.)  Trustee filed an amended complaint on November 28, 2016.  (Id.)  The amended complaint sought recovery under: (1) 11 U.S.C. § 547 (preferential transfers); (2) 11 U.S.C. § 548 (fraudulent transfers); and (3) 11 U.S.C. § 544 (incorporating a cause of action under the Texas Uniform Fraudulent Transfer Act ("TUFTA")).  (Id. at 2–3.)  After a four-day, non-consecutive trial conducted over September and November 2017, the Bankruptcy Court issued a judgment in favor of the Trustee on its counts against Zehr, avoiding the $2,518,394.09 transfer to him as a fraudulent transfer under both 11 U.S.C. § 548, and 11 U.S.C. § 544 and TUFTA.  (Adv. Dkts. ## 149, 190.)  The judgment also awarded the Trustee prejudgment and postjudgment interest, as well as attorneys' fees and costs.  (Adv. Dkt. # 149.)

Appellant filed a notice of appeal in the Bankruptcy Court on August 9, 2018.  (Adv. Dkt. # 196.)  As required by Bankruptcy Rule 8007, Appellant first moved in the Bankruptcy Court for a stay of the judgment pending appeal.  (Adv. Dkt. # 212.)  The Bankruptcy Court denied Zehr's motion for stay, on the record in open court on December 12, 2018 (Dkt. # 26-1, Ex. 1 at 6–9), and by a filed order the next day (Adv. Dkt. # 228).  Appellant then filed a motion for stay pending appeal in this case on December 14, 2018.  (Dkt. # 21.)  The Trustee filed his

response in opposition on December 28, 2018.  (Dkt. #  26.)  A hearing was held on

January 9, 2019.

LEGAL STANDARD

The decision to grant or deny a stay pending appeal rests in the

discretion of this Court.  In re First South Savings Ass'n, 820 F.2d 700, 709 (5th

Cir. 1987).  However, this Court must exercise its discretion in light of four

recognized criteria, id., which are similar to the requirements for a preliminary

injunction.  To prevail, the movant must show: (1) a likelihood of success on the

merits; (2) an irreparable injury if the stay is not granted; (3) that the stay will not

substantially harm the other parties; and (4) that the stay will serve the public

interest.  In re Burkett, 279 B.R. 816, 817 (Bankr. W.D. Tex. 2002) (citing In re

First South Savings Ass'n, 820 F.2d at 709).

DISCUSSION

With regards to the likelihood of success requirement for a stay

pending appeal, ordinarily a stay cannot be granted "unless the movant has shown

that success on appeal is probable."  Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir.

1981) ("Ruiz I")  However, "the movant need not always show a 'probability' of

success on the merits; instead, the movant need only present a substantial case on

the merits when a serious legal question is involved and show that the balance of

equities weighs heavily in favor of granting the stay." In re First South Savings Ass'n, 820 F.2d at 709 n.10 (quoting Ruiz I, 650 F.2d at 565 (5th Cir. 1981)).

"In other words, the movant's burden on the first prong may be lightened—say, from 'probable' to 'merely probable'—if, for the remaining three prongs (commonly referred to collectively as the 'balance of the equities'), the movant makes a compelling case . . . ." In re Mounce, 2008 WL 2714423, *2 (Bankr. W.D. Tex. July 10, 2008.) But the Fifth Circuit has clarified:

> Likelihood of success remains a prerequisite in the usual case even if it is not an invariable requirement. Only "if the balance of equities (i.e. consideration of the other three factors) is . . . heavily tilted in the movant's favor" will we issue a stay in its absence, and, even then, the issue must be one with patent substantial merit.

Ruiz v. Estelle, 666 FF.2d 854, 857 (5th Cir. 1982) ("Ruiz II") (quoting Ruiz I, 650 F.2d at 565–66).

Appellant argues he is entitled to application of the less burdensome "substantial case on the merits" formulation of the first Ruiz element. (Dkt. # 21 at 7.) Therefore, the Court begins its analysis by discussing the equitable considerations of irreparable injury, substantial harm to other parties, and the public interest.

I.     Irreparable Injury

"By definition, 'irreparable injury' is that for which compensatory damages are unsuitable." Wildmon v. Berwick Universal Pictures, 983 F.2d 21, 24

6

(5th Cir. 1992).  Ordinarily, "[a]n injury is 'irreparable' only if it cannot be undone

through monetary remedies."  <u>Deerfield Med. Ctr. v. City of Deerfield Beach</u>, 661

F.2d 328, 338 (5th Cir. 1981).  However, "[t]he absence of an available remedy by

which the movant can later recover monetary damages . . . may also be sufficient to

show irreparable injury."  <u>Enter. Int'l, Inc. v. Corporacion Estatal Petrolera</u>

<u>Ecuatoriana</u>, 762 F.2d 464 (5th Cir. 1985); <u>see also</u> <u>Ohio Oil Co. v. Conway</u>, 279

U.S. 813, 814 (1929).  So might "[difficulty] in collecting a damage judgment[.]"

<u>Tri-State Generation v. Shoshone River Power, Inc.</u>, 805 F.2d 351, 355 (10th Cir.

1986).

Appellant argues that he risks suffering irreparable injury because

satisfying the judgment will require him to unwind his investment portfolio as he

approaches retirement.  (Dkt. # 21 at 10.)  In and of itself, this harm is not

irreparable, because it could be undone through monetary remedies.  However,

Appellant further argues that once the liquidated proceeds from his assets are

distributed to creditors of Debtor's estate, "it will be virtually impossible for [him]

to claw-back the distributions from the many creditors of the estate."  (Dkt. # 21 at

10–11.)  This risk is especially likely, according to Appellant, because, as the

Bankruptcy Court has recognized, the judgment against him is the only asset of the

estate.  (Dkt. # 21 at 11.)

Although a close issue, the Court is satisfied that this argument states an irreparable injury. This Court has recognized that where the assets of a debtor are at risk of being distributed while an appeal is pending, post judgment legal relief to recover damages can be lacking and a cognizable irreparable injury exists. See In re Permian Producers Drilling, Inc., 263 B.R. 510, 522 (W.D. Tex. 2000) (holding that "monetary injury resulting from the distribution of assets pursuant to a confirmed reorganization plan poses an exception" to the "general rule" that a "[p]urely monetary injury is not irreparable" because on appeal the court "does not have the power to affect the validity of a sale of property to a good faith purchaser pursuant to an unstayed authorization") (citing Licensing by Paolo, Inc. v. Sinatra (in re Gucci), 105 F.3d 837, 839–40 (2d Cir. 1997)). Further, the likelihood of deterioration of a debtor's assets, which might undermine the utility of an appellant's appeal, poses a serious risk of irreparable harm from a failure to grant a stay. In re Barrier, 776 F.2d 1298, 1300 (5th Cir. 1985).

If Zehr is forced to satisfy the judgment prior to the resolution of his appeal and the proceeds are distributed to the estate's creditors, Appellant might find it difficult or impossible to be made whole again if successful on his appeal. Trying to claw back distributions from each individual creditor is likely to prove costly, inefficient, and possibly ineffective. Therefore, although the threatened

harm is purely monetary, monetary remedies are at risk of being insufficient, and the threatened harm is irreparable.[2]

II.    Substantial Harm to Other Parties

Appellant argues the Trustee will not be harmed by a stay of the final judgment because Appellant "freely consents to a voluntary injunction that prohibits him from using, selling, or leasing his non-exempt assets outside the course of business." (Dkt. # 21 at 11.) But the trustee is not the only party in interest at risk of harm by granting a stay. "A fundamental purpose of the bankruptcy system is 'to convert the assets of the bankrupt into cash for distribution among creditors." In re Permian, 263 B.R. at 522 (quoting Sec. Nat'l Bank v. Cotton (In re Atlanta Int'l Raceway, Inc.), 513 F.2d 546, 550 (5th Cir. 1975)). Because a delay in payment to creditors runs counter to this fundamental purpose, it harms creditors. Id.

The underlying bankruptcy related to this case has been pending since August 2015. (Dkt. # 21 at 3.) And the adversary proceeding was first filed on March 31, 2016—almost three years ago. (Id.) Further delay in payment resulting from a stay pending appeal would exacerbate the harm already suffered by creditors. See In re Permian, 263 B.R. at 522.

---

[2] However, the Court notes, as also discussed in this Order, that granting the Appellant's motion for stay may well result in irreparable harm to the creditors.

Moreover, the Trustee represents to the Court that Appellant has been less than forthcoming about the status and extent of his assets, non-exempt or otherwise. And the Court further notes that Appellant has failed to provide any details of his assets or ability to satisfy the judgment in his motion to stay. (See Dkt. # 21.) Therefore, the Court concludes that Appellant's offer of a mere injunction related to his unascertained non-exempt assets that only prohibit their use outside the vaguely defined "ordinary course of business" does not sufficiently protect the Trustee or the estate's creditors "from the vagaries of the marketplace, or from the loss of the time value of money as a result of . . . being tied up in litigation during the pendency of an appeal." In re Burkett, 279 B.R. at 817. Nor does it "cover the costs of the trustee in defending the favorable ruling [already obtained] should [he] prevail on appeal." Id. Thus, this Court concludes that a stay would substantially harm other parties in the litigation.

III.    The Public Interest

Appellant appears to concede that "[t]here is no strong public concern or interest opposed to or in favor of the stay" he requests. (Dkt. # 21 at 11.) This concession alone seems to defeat Appellant's request for a stay, because the movant carries a burden of showing that the stay is affirmatively in the public interest. See Ruiz II, 666 F.2d at 856; see also Drummond v. Fulton Cty. Dept. of Family & Children's Servs., 532 F.2d 1001, 1002 (5th Cir. 1976). Instead,

Appellant argues that public policy does not support improperly avoided transfers and discourages the disruption and economic uncertainty that accompany them. (Id.) It seems to this Court that Appellant's argument is, in essence, that public policy does not support the enforcement of flawed judicial decisions. While that principle is undoubtedly true, it is an argument that a reversal of the Bankruptcy Court's decision, if warranted, serves the public interest—it is not an argument that a stay does so.

Further, a judicial decision is not flawed merely because it is being appealed. Whether or not an adjudication is flawed—whether or not the transfer in this case was improperly avoided—is exactly the issue to be resolved on appeal. Under Appellant's argument, the public interest would always be served by a stay while an appeal is pending. And if the public interest element is always satisfied whenever an appeal is filed, it is a superfluous criterion.

Finally, the public interest benefits presented by Appellant are contingent upon a successful appeal. If the transfer was not wrongly avoided, there is no public benefit. And as discussed *infra*, Appellant cannot show that he has a likelihood of success on the merits. Stated another way, he cannot show a likelihood that the transfer in this case was wrongly avoided. The Court thus concludes the public interest is not served by granting a stay. See In re Permian, 263 B.R. at 523.

In summation, although Appellant has demonstrated that he is likely to suffer an irreparable injury, he has not demonstrated that no substantial harm will befall other parties, nor has he demonstrated that the public interest favors the stay. In balancing the equities in light of Appellant's failure on these elements, the Court concludes the balance of equities does not weigh heavily in favor of a stay. Appellant is thus not entitled to the "substantial case on the merits" standard he requests; instead, the "likelihood of success" standard applies. See Ruiz II, 666 F.2d at 856. Therefore, the Court now turns to whether Appellant has established that likelihood of success on the merits.

IV.     Likelihood of Success on the Merits

As previously stated, in order to show likelihood of success on the merits, the Appellant must demonstrate that "success on appeal is probable." Ruiz I, 650 F.2d at 565. Appellant's arguments on this issue are all premised on the propriety of the Bankruptcy Court's finding that the debtor did not receive reasonably equivalent value in exchange for the avoided transfer. (See Dkt. # 21 at 7.)

Ordinarily, whether reasonably equivalent value has been given for a transfer is "fact-intensive, as the court bases its determination upon subsidiary fact findings regarding the value of the property transferred and the value received in the exchange." Tex. Truck Ins. Agency, Inc. v. Cure (Matter of Dunham), 110 F.3d

286, 289 (5th Cir. 1997) (citing In re Besing, 981 F.2d 1488, 1495 (5th Cir. 1993).

Because reasonably equivalent value is "largely a question of fact[,] . . .

considerable latitude must be allowed to [the Bankruptcy Court as the] trier of the

facts." Matter of Dunham, 110 F.3d at 289 (quoting Mayo v. Pioneer Bank & Tr.

Co., 270 F.2d 823, 829–30 (5th Cir. 1959)). Such determinations are therefore

reviewed for clear error. (Id.) The clearly erroneous standard is "significantly

deferential, requiring a 'definite and firm conviction that a mistake has been

committed.'" Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr.

for S. Cal., 508 U.S. 602, 623 (1993) (quoting United States v. Gypsum Co., 333

U.S. 364, 395 (1948)). Because "appellate courts cannot evaluate the demeanor

and candor of witnesses[,]" and the Bankruptcy Court's findings of fact are "based

primarily on an evaluation of the credibility and demeanor of witnesses[,]" such

findings of fact are "highly unlikely to be reversed on appeal as 'clearly

erroneous.'" In re Burkett, 279 B.R. at 817.

However, some of Appellant's arguments raise issues that sound in

law and are not strictly factual, therefore requiring more substantive discussion.

The four arguments raised by appellant in his motion are: (1) the Trustee did not

meet his burden of proof of showing FWLL did not receive reasonably equivalent

value; (2) the Bankruptcy Court did not consider reasonably equivalent value from

the perspective of the debtor; (3) FWLL received reasonably equivalent value; and

(4) the "badges of fraud" under the actual-fraudulent-transfer analysis need to be rebalanced since FWLL received reasonably equivalent value. (Dkt. # 21 at 7–10.) The Court addresses each of these arguments in turn.

A.    The Trustee's Prima Facie Case

"In order to establish a prima facie case for avoiding a transfer as constructively fraudulent, the trustee must demonstrate that the debtor 'received less than a reasonably equivalent value in exchange for such transfer or obligation.'" In re Hannover Corp., 310 F.3d 796, 802 (5th Cir. 2002) (citing 11 U.S.C. § 548(a)(1)(B)(ii)); see also In re Huffman, 505 B.R. 726, 754 (Bankr. S.D. Miss. 2014) (holding that the trustee has the burden of proving by a preponderance of the evidence that, given the totality of the circumstances, the consideration received by the debtor was not of a reasonably equivalent value). TUFTA imposes an identical requirement. See In re Pace, 456 B.R. 253, 270 (Bankr. W.D. Tex. 2011).

Appellant argues that the Bankruptcy Court erred in finding the trustee had carried his burden because "the only evidence put on by the Trustee of value that the Debtor received . . . was the Trustee's own testimony that an insolvent entity's release from debt has no value." (Dkt. # 21 at 7–8.) However, Appellant's argument is belied by the record. The Bankruptcy Judge's Memorandum Opinion references and summarizes the testimony of nine different

witnesses whose "testimony . . . relates to Trustee's claim for relief and the Defendants' defenses." (Dkt. # 26-1, Ex. 2 at 23–37.) The Trustee's response in opposition to Appellant's motion for judgment also contains extensive citations to case law and the record regarding the Trustee's prima facie burden on the issue of reasonably equivalent value. (See Dkt. # 26-2, Ex. 4 at 44–51.)

  B. <u>Reasonably Equivalent Value from the Perspective of the Debtor</u>

    Whether reasonably equivalent value has been paid is analyzed "from the perspective of the transferor[,]" asking "Did the transferor receive enough?" <u>In re Hannover Corp.</u>, 310 F.3d at 796. More specifically, "[t]o measure reasonably equivalent value, we judge the consideration given for a transfer from the standpoint of creditors." <u>In re TransTexas Gas Corp.</u>, 597 F.3d 298, 306 (5th Cir. 2010) (citing <u>In re Hinsley</u>, 201 F.3d 638, 644 (5th Cir. 2000)).

    Appellant argues the Bankruptcy Court erred by considering reasonably equivalent value from the perspective of what Zehr gave instead of what FWLL received. (Dkt. # 21 at 8; <u>see also</u> Dkt. 21-1, Ex. A at 33–34.) But once again, Appellant's contention is contradicted by the record. The Bankruptcy Judge acknowledged Appellant's position that the "Court's inquiry . . . focuses on whether the Debtor received less than reasonably equivalent value—not just Zehr's releases." (Dkt. # 26-2, Ex. 2 at 40.) The Bankruptcy Court expressly found that "the value given by the transferees (Zehr and the other Defendants) is measured as

15

of the time of the transfer, *from the perspective of what the transferor . . .*

*received*." (Id. at 42 (emphasis added).)   The Court further expressly found,

"under the totality of the circumstances urged by Zehr, *that what the transferor . . .*

*received* was small in comparison to the diminution of the FWLL's estate." (Id. at

43 (emphasis added).)

      C.    <u>Whether FWLL Received Reasonably Equivalent Value</u>

      Reasonably equivalent value means that "the debtor has received

value that is substantially comparable to the worth of the transferred property."

<u>BFP v. Resolution Tr. Corp.</u>, 511 U.S. 531, 548 (1994).  "The proper focus [of the

reasonably equivalent value analysis] is on the net effect of the transfers on the

debtor's estate, and the funds available to the unsecured creditors."  <u>In re</u>

<u>TransTexas Gas Corp.</u>, 597 F.3d at 306 (quoting <u>In re Hinsley</u>, 201 F.3d at 644).

Therefore, "[t]he Test for 'reasonably equivalent value' is whether the net

economic effect of the transfer was a dissipation of the debtor's estate."  <u>Husky</u>

<u>Int'l Elecs., Inc. v. Ritz (In re Ritz)</u>, 567 B.R. 715, 745 (Bankr. S.D. Tex. 2017)

(quoting <u>In re WRT Energy Corp.</u>, 282 B.R. 343, 405 (Bankr. W.D. La. 2001)).

      Appellant argues that FWLL received at least reasonably equivalent

value through the release from and indemnity for FWLL's liability as a member of

the Joint Venture because "release from an antecedent debt is value to the

transferor that is not diminished or reduced if the transferor was insolvent at the

time of the transfer." (Dkt. # 21 at 8–9; see also Dkt. # 21-1, Ex. A at 35–40.)

Accordingly, Appellant contends that FWLL's release from $4.2 million in existing

debt owed by the Joint Venture—for which Appellant asserts that as a partner in the

Joint Venture it was jointly and severally liable—and from any future claims that

may have been made against the Joint Venture were at least reasonably equivalent

value for the $2.5 million in cash it transferred to Zehr. (Dkt. # 21-1, Ex. A at 39.)

According to Appellant, the Bankruptcy Court overlooked the value of these

releases in its reasonably equivalent value analysis. (Id.)

However, as noted by the Bankruptcy Judge, marking the promissory

note paid in full "had no value to FWLL because the debt belonged to the Joint

Venture, not FWLL." (Dkt. # 26-1, Ex. 2 at 32.) Although FWLL was potentially

liable as a partner in the Joint Venture, under Texas law "a partner's liability [is]

not only derivative of the partnership's liability, but contingent on it for all

practical purposes." Am. Star Energy & Minerals Corp. v. Stowers, 457 S.W.3d

427, 431 (Tex. 2015). "If a partnership obligates itself to pay a sum," before a

partner can be called on to pay "the claim must be litigated against the partnership

so that its obligation is determined, reduced to damages, and fixed in a judgment."

Id. (citing Tex. Bus. Orgs. Code § 152.306(b)(2)(A). Thus, "a creditor's rights

against a partner do not arise when the partnership incurs an obligation." Id. at

432.

Instead, "[u]nder the entity theory of partnerships," which Texas adopted in passing the Texas Revised Partnership Act,[3] "a partner has no liability until the partnership liability is established." In re Jones, 161 B.R. 180, 183 (Bankr. N.D. Tex. 1993); see also Evanston Ins. Co. v. Dillard Dep't Stores, Inc., 602 F.3d 610, 617 (5th Cir. 2010) (holding that a cause of action against partners only accrues "at the earliest, upon entry of judgment against" the partnership). "Considering the derivative and contingent nature of [a partner's] liability, the only obligation for which a partner is really responsible is to make good on the judgment against the partnership, and generally only after the partnership fails to do so." Am. Star Energy, 457 S.W.3d at 431 (emphasis added). Although ZSV held a promissory note from the Joint Venture, the debt had not been reduced to a judgment, nor had the partnership been given the opportunity—and then failed—to satisfy the obligation. There was therefore no antecedent debt that FWLL was liable for, and thus the release by ZSV of the debt owed by the Joint Venture and secured by the promissory note was of no value, or of only speculative and contingent marginal value, to FWLL.[4]

---

[3] "A partnership is an entity distinct from its partners." Tex. Bus. Orgs. Code § 152.056.

[4] Because the release of the Joint Venture's debt to ZSV was of minimal value to FWLL, the Court does not reach Appellant's indirect benefits arguments about the

Further, even if FWLL was liable for partnership debts at the time of the transfer, it is not clear that the Joint Venture actually owed ZSV the full $4.2 million as a debt in the first place. The only uncontested evidence of debt owed by the Joint Venture to ZSV in the record is the $2.4 million secured by the promissory note. (Dkt. # 26-3, Ex. 5 at 3.) Although the record indicates that Zehr's total investments in ZSV, which in turn were used by the Joint Venture, were approximately $4.2 million (id.), it is unclear what the nature of that remaining $1.8 million was, whether it was infused as a loan or under some other form of financial arrangement.[5] As far as this Court can determine, therefore, the only antecedent debt owed by the Joint Venture, let alone FWLL, was the $2.4 million secured by the promissory note.

Further, even if FWLL was jointly and severally liable for that $2.4 million debt, FWLL would have been entitled to contribution from the other partner—ZSV—"in the proportion in which the partner shares partnership losses." Tex. Bus. Orgs. Code § 152.708(a)(1), (3). As ZSV owned 55% of the Joint Venture (Dkt. # 26-3, Ex. 5 at 3.), FWLL would have been entitled to a

---

propriety of paying Zehr instead of ZSV for the release of debt held by ZSV. (See Dkt. 21 at 9; see also 21-1, Ex. A at 41–43.)

[5] It is worth noting that this is likely one of the reasons why partnership liability must be fixed in a judgment before collection can be had against a partner.

contribution from ZSV of 55% of any partnership debt it was obligated to satisfy

through the operation of joint and several liability, including any debt owed by the

partnership to ZSV. Therefore, based on the facts before the Court, the most the

release of the promissory note by ZSV could be said to be reasonably worth to

FWLL is 45% of $2.4 million, or $1.08 million. The release of the promissory

note, if it was even worth anything to FWLL, was thus only worth, at most, less

than half of the $2.5 million FWLL paid for it. Such a transfer is clearly a

"dissipation of the debtor's estate," In re Ritz, 567 B.R. at 745, that diminished

"the funds available to the unsecured creditors," In re TransTexas Gas Corp., 597

F.3d at 306.

      D.    The "Badges of Fraud"

      In determining whether a transfer is avoidable as an actual fraudulent

transfer, courts look to the presence of certain "badges of fraud" as circumstantial

evidence of the transferor's intent to hinder, delay, or defraud. In re Souza, 542

F.3d 1060, 1067 (5th Cir. 2008). One such "badge of fraud" is whether the

transferor received reasonably equivalent value. Id. (quoting Chastant v. Chastant

(In re Chastant), 878 F.2d 89, 91 (5th Cir. 1989)).

      Appellant's final argument is that the Bankruptcy Judge erred in

finding actual fraud when the debtor received reasonably equivalent value and that

this Court should remand the case, so the Bankruptcy Court can re-balance its

"badges of fraud" analysis.  (Dkt. # 21 at 10.)  However, Appellant's arguments on this point are derivative of his substantive arguments as to how the Bankruptcy judge erred in finding that no reasonably equivalent value was paid.  If the Bankruptcy Judge's finding regarding the lack of reasonably equivalent value is correct, there is nothing to re-balance.  And as discussed *supra*, Appellant has failed to demonstrate a likelihood of success on the merits of any of his previous arguments relating to that issue.

Therefore, the Court concludes that under the deferential clearly erroneous standard, Appellant's arguments have not raised a likelihood that on full review the Court will arrive at a "definite and firm conviction that a mistake has been committed."  See Concrete Pipe & Prod., 508 U.S. at 623 (1993) (quoting Gypsum Co., 333 U.S. at 395).

For the foregoing reasons, in spite of having shown an irreparable injury, Appellant has not satisfied his burden of showing: (1) likelihood of success on the merits; (2) that the stay will not substantially harm the other parties; or (3) that the stay will serve the public interest.  See In re Burkett, 279 B.R. at 817 (citing In re First South Savings Ass'n, 820 F.2d at 709).  Therefore, a stay is not warranted in this case.

<u>CONCLUSION</u>

For the reasons stated, the Court **DENIES** Appellant's Motion for

Stay Pending Appeal.  (Dkt. # 21.)

	**IT IS SO ORDERED.**

	**DATED**: San Antonio, Texas, January 17, 2019

						_____
						David Alan Ezra
						Senior United States Distict Judge